UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CREECH SERVICES, INC.,

      Plaintiff,

v.

MONEY'S FOODS US, INC.,

      Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:04-cv-00815

## OPINION

This matter is before the Court on the objections filed by both parties to the Report and Recommendation of the Special Master. As discussed below, the parties' objections are each **granted in part and denied in part**.

## BACKGROUND

This is a breach of contract action. While Defendant's liability is not in question, (dkt. #53), the extent of its liability is very much in dispute. On March 30, 2006, the parties stipulated to the appointment of a Special Master to determine the amount of damages incurred by Plaintiff. The Special Master submitted a Report in which he recommended that Plaintiff be awarded $1,000,313.98 in damages. (Dkt. #75). The parties have both submitted objections to the Special Master's Report. Pursuant to Federal Rule of Civil Procedure 53, the Court has undertaken a de novo review of the Special Master's recommendations and the objections thereto. As part of its review, the Court conducted an evidentiary hearing (as permitted by Rule 53) on May 15, 2006.

**ANALYSIS**

To eliminate confusion as to the amount to which Plaintiff is entitled, the Court will address each aspect of the Special Master's Report - regardless whether the parties submitted an objection thereto.

**I.        Lost Profits**

With respect to the material which is the subject of Defendant's breach, Plaintiff seeks $444,448.72 in lost profits. The Special Master agreed with Plaintiff and concluded that it should receive the amount requested in damages. Defendant objected to the Special Master's conclusions, but at the outset of the May 15, 2006 evidentiary hearing withdrew its objection. The Special Master's conclusion is consistent with relevant authority. *See* Mich. Comp. Laws § 440.2706. Accordingly, the Special Master's conclusion on this particular matter is adopted and Plaintiff shall be awarded $444,448.72 in lost profits damages.

**II.       Incidental Damages**

Plaintiff is entitled to receive any incidental damages incurred as a result of Defendant's breach. *See* Mich. Comp. Laws §§ 440.2706, 440. 2710. Michigan law defines incidental damages as "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." Mich. Comp. Laws § 440. 2710.

On the other hand, Plaintiff is not permitted to recover its consequential damages, defined as those damages which "do not arise within the scope of the immediate buyer-seller transaction, but

rather stem from losses incurred by the nonbreaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting party." *Sullivan Industries, Inc. v. Double Seal Glass Co., Inc.*, 480 N.W.2d 623, 630-31 (Mich. Ct. App. 1991); *see also*, *United States v. Reifler*, 446 F.3d 65, 108 (2d Cir. 2006) ("[c]onsequential damages are generally defined as damages for a loss or injury that does not flow directly and immediately from the act of the party but flows only from some of the consequences or results of the party's act or from the intervention of ordinarily unpredictable special circumstances"). Plaintiff is seeking to recover various types of incidental damages, each of which is discussed below.

      A.     Lost Compost Sales

Plaintiff asserts that because of Defendant's breach, it was forced to store the material in question at its composting facility. According to Plaintiff, the storage of this material prevented Plaintiff from operating its normal composting operation. Plaintiff, therefore, seeks to recover $200,000 in lost compost sales. The Special Master awarded this amount to Plaintiff as incidental damages. Defendant objects to this conclusion on the ground that these particular losses are not properly characterized as incidental damages. The Court agrees.

These losses were not incurred by Plaintiff incident to the care, custody, or transportation of the material in question. These losses do not flow directly from Defendant's breach or the parties' relationship as buyer-seller, but instead were reasonably foreseeable losses incurred by an altogether separate division of Plaintiff's enterprise resulting only indirectly from Defendant's breach. The Special Master's conclusion on this particular item is, therefore, rejected and Plaintiff shall receive no damages for its lost compost sales.

B.   Additional Trucking from Baling Facility to Composting Facility

Plaintiff seeks $57,763.50 in damages to compensate it for costs incurred in transporting the material in question from Plaintiff's baling facility to the composting facility where it was stored and maintained. The Special Master, consistent with the above authority, awarded this amount to Plaintiff as incidental damages. Neither party has objected to this conclusion. Accordingly, the Special Master's finding on this particular matter is adopted and Plaintiff shall be awarded $57,763.50 in damages.

C.   Additional Trucking from Composting Facility to Market

Plaintiff seeks an additional $57,763.50 in damages to compensate it for costs incurred in transporting the material in question from Plaintiff's composting facility "back to town for sale." The Special Master denied Plaintiff's request because it was a theoretical expense which "has not been incurred." Plaintiff objected to this finding, but at the outset of the evidentiary hearing withdrew its objection. Accordingly, the Special Master's finding on this particular matter is adopted and Plaintiff shall not be awarded any damages pursuant to this request.

D.   Additional Loader Time

Because of the sheer volume of material in question Plaintiff was forced to stack the material in piles greater than 20 feet high. As Mr. Charles Creech testified, this necessitated the use of front-end loaders. Mr. Creech further testified that Plaintiff generally does not use front-end loaders in either its baling or composting activities.

Plaintiff initially sought to recover $18,510.00 in damages for the operational costs of the front-end loaders to stack the material in question. The Special Master awarded Plaintiff $9,255.00 in

damages pursuant to this request. In reaching this conclusion, the Special Master took issue with Plaintiff's calculation. Specifically, the Special Master noted that because the front-end loaders were owned by Plaintiff, the appropriate measure of damages should be an amount equal to the "wear and tear, depreciation and/or lack of the ability to use the loaders in other aspects of its operation," rather than the "fair rental value" amount utilized by Plaintiff.

Both parties objected to the Special Master's finding. At the outset of the evidentiary hearing Plaintiff informed the Court that it had modified its request and was now seeking only $10,870.31 in damages to operate the front-end loaders. Plaintiff is certainly entitled to recover damages for the use of its front-end loaders, as such were used to facilitate the "care and custody of goods after the buyer's breach." Thus, the only remaining question is whether Plaintiff is entitled to the entire amount requested.

At the evidentiary hearing, Mr. Creech testified that Plaintiff operated its front-end loaders for 123.4 hours to stack the material in question. Defendant has presented no evidence calling this testimony into question. As for the expenses incurred by Plaintiff to operate its front-end loaders for that length of time, Plaintiff introduced evidence that it costs $88.09 per hour to own and operate the type of front-end loader in question. (Plaintiff's Exhibits 4-6). This evidence is detailed and persuasive. Defendant, on the other hand, has presented no evidence calling into question this calculation.

The Court finds that with respect to this particular request Plaintiff has articulated its damages with reasonable certainty. This evidence was not available to the Special Master. The Special Master's recommendation is, therefore, adopted in part and rejected in part. Accordingly, Plaintiff shall receive $10,870.31 in damages for the use of its front-end loaders.

E.      Additional Labor Cost to Fight Fire

Because Plaintiff was compelled to maintain the material in question in stacks exceeding 20 feet high, portions thereof soon thereafter spontaneously combusted and began burning. The local fire department was unable to extinguish the fire. Instead, Plaintiff was forced to employ several individuals to help control - and eventually extinguish - this fire, as well as act to prevent additional fires. Plaintiff requested $53,166.91 in damages to compensate it for the wages and benefits paid to these employees for their fire control services. The Special Master denied Plaintiff's request, finding that such constituted consequential damages. Plaintiff objected to the Special Master's conclusion. During the evidentiary hearing Plaintiff reduced its request to $26,517.52. (Plaintiff's Exhibit 7).

In the Court's estimation, these costs were incurred as a direct result of Plaintiff's efforts to properly care for the material in question and, therefore, constitutes a compensable damage pursuant to the authority identified above. Defendant has presented no evidence calling into question Plaintiff's calculation of the amounts it incurred in this respect. The Special Master's recommendation is, therefore, rejected and Plaintiff shall receive $26,517.52 in damages for the amounts it expended in labor costs to control and prevent fire directly related to the care and custody of the material in question.

F.      Cost to Purchase Fire Pump and Fuel for Fire Fighting and Prevention

As indicated above, Plaintiff was forced to undertake on its own the efforts to fight and prevent fire related to the care and custody of the breach-related material. In addition to employing individuals to participate in this effort, Plaintiff was also forced to purchase the machinery (and fuel) necessary to accomplish this task. Plaintiff requested $89,444.43 in damages to compensate it for the cost of this equipment. The Special Master denied Plaintiff's request, finding that such constituted

consequential damages. Plaintiff objected to the Special Master's conclusion. During the evidentiary hearing Plaintiff reduced its request to $78,744.43. (Plaintiff's Exhibits 9-10).

Again, the Court finds that these costs were incurred as a direct result of Plaintiff's efforts to properly maintain the material in question and, therefore, constitutes a compensable damage. Defendant has presented no evidence calling into question Plaintiff's calculation, the evidence in support of which the Court finds persuasive. The Special Master's recommendation is, therefore, rejected and Plaintiff shall receive $78,744.43 in damages for the amounts it expended in machinery and fuel costs to control and prevent fire.

### G. Cost to Clean Out Retention Pond

Because of the exceedingly high volumes of water which Plaintiff was forced to pour over the breach-related material, a significant amount of contaminated silt washed into the retention pond which Plaintiff used as part of its composting operation. To prevent the unlawful discharge of contaminated material Plaintiff was forced to clean out its retention pond. Plaintiff requested $8,100.00 in damages to compensate it for the cost to clean out the retention pond. The Special Master denied Plaintiff's request, finding such to constitute consequential damages. Plaintiff objected to the Special Master's conclusion. During the evidentiary hearing Plaintiff reduced its request to $5,687.00. (Plaintiff's Exhibits 11-15).

Just as with the previous two items, the Court finds that these costs were incurred as a direct result of Plaintiff's efforts to properly maintain the breach-related material and, therefore, constitutes a compensable damage. The question, therefore, becomes the amount to which Plaintiff is entitled. Defendant has presented no evidence calling into question Plaintiff's calculation. With one

exception, the Court finds Plaintiff's evidence regarding the amount of its damages persuasive. The lone exception regards Plaintiff's alleged damages to operate its turner machine.

The Court agrees with the Special Master that the fair rental value (the amount on which Plaintiff relies) is an inappropriate measure of Plaintiff's damages - especially where there exists no evidence that Plaintiff would have been able to actually rent its turner machine to others had Defendants not breached the contract. As the Special Master correctly observes, a more appropriate measure of the damages incurred through use of the turner machine would be "wear and tear, depreciation, or inability to use the machine in other operations." As discussed above, Plaintiff has presented evidence regarding the cost to own and operate its front-end loader. However, Plaintiff has presented no such evidence with regard to its turner machine. Given Mr. Creech's testimony that few turner machines exist, the Court suspects that such evidence is not readily available. Such does not, however, relieve Plaintiff of its obligation to establish its damages with reasonable certainty. On the other hand, Plaintiff's failure in this regard should not preclude it from all recovery with respect to the use of its turner machine.

The Court finds that the cost to own and operate the turner machine is at least equal to the cost to own and operate the front-end loader identified above. Thus, rather than awarding Plaintiff $250 per hour for use of the turner machine, the Court awards Plaintiff $88.09 for each hour the turner machine was operated. The Court recognizes that this amount may be less than the true cost to own and operate a turner machine. However, the Court cannot simply guess as to the appropriate amount to award Plaintiff. While the Court's resolution of this issue is less than perfect, the Court finds that it represents the most equitable method of balancing (a) Plaintiff's clear entitlement to damages with (b) Plaintiff's obligation to establish its damages with reasonable certainty.

Accordingly, the Special Master's recommendation is rejected and Plaintiff shall receive $4,391.72 in damages for the amounts it expended to clean out its retention pond.

H.   Additional Turner Time

As part of its efforts to properly maintain the breach-related material, Plaintiff was subsequently required to blend the material in question with other (pre-existing) material. To accomplish this, Plaintiff used a turner machine.

Plaintiff requests $74,000.00 in damages for the operational costs of the turner machine. The Special Master awarded Plaintiff $22,200.00 in damages pursuant to this request. In reaching this conclusion, the Special Master objected to Plaintiff's calculation. Specifically, the Special Master again determined that because the turner machine was owned by Plaintiff, the appropriate measure of damages should be an amount equal to the "wear and tear, depreciation, or inability to use the machine in other operations," rather than the "fair rental value" amount utilized by Plaintiff.

Both parties objected to the Special Master's finding. Plaintiff is certainly entitled to recover damages for the use of its turner machine, as such was used to properly maintain the material in question following Defendant's breach. The only question, therefore, is whether Plaintiff is entitled to the entire amount requested. For the reasons discussed in the preceding section, the Court finds that Plaintiff is entitled to only $88.09 in damages for each hour that the turner machine was operated. The Special Master's recommendation is, therefore, adopted in part and rejected in part. Accordingly, Plaintiff shall receive $26,074.64 in damages for the use of its turner machine.

      I.      Interest on Loan for a New Pad

According to Plaintiff it was forced (due to the inordinate amount of breach-related material) to construct a concrete pad (approximately 10 acres in size) on which to store and process the material in question. Mr. Creech testified that Plaintiff had to borrow the money necessary to construct this new pad. As a result of having to borrow this money, Plaintiff seeks $60,000.00 in interest damages. The Special Master denied Plaintiff's request, finding such to be a consequential damage. Plaintiff objects to the Special Master's conclusion.

The Court agrees with the Special Master that these amounts are not recoverable. *See Sullivan Industries*, 480 N.W.2d at 631 ("interest paid on loans taken out to maintain business operations" not recoverable as an incidental damage); *Stamtec, Inc. v. Anson Stamping Co, LLC*, 346 F.3d 651, 658-59 (6th Cir. 2003) ("interest paid on a commercial loan" not recoverable as an incidental damage); *Firwood Mfg. Co., Inc. v. General Tire, Inc.*, 96 F.3d 163, 170 (6th Cir. 1996) ("interest payments constitute consequential damages"). Accordingly, the Special Master's conclusion on this particular matter is adopted and Plaintiff is not entitled to recover any interest-related damages.

      J.      Cost to Relocate Material to the New Pad

After completing construction of the new concrete pad described above, Plaintiff had to move the breach-related material thereto to facilitate its proper care and custody. Plaintiff initially sought to recover $210,579.75 in damages for the costs incurred in moving this material. The Special Master awarded Plaintiff $126,646.75 in damages pursuant to this request. In reaching this conclusion, the Special Master again found that with respect to the equipment that Plaintiff already owned, the

appropriate measure of damages was not the "fair rental value," but instead an amount representing the depreciation and wear and tear of the machines used for this purpose.

Both parties objected to the Special Master's finding. At the outset of the evidentiary hearing Plaintiff informed the Court that it had modified its request and was now seeking only $125,900.37 in damages to relocate the material to the new concrete pad. The Court finds that Plaintiff in entitled to damages because these relocation activities were undertaken to facilitate the "care and custody of goods after the buyer's breach." Thus, the only remaining question is whether Plaintiff is entitled to the entire amount requested.

Mr. Creech testified at length regarding the various activities and processes undertaken to properly relocate the breach-related material. He testified that to accomplish this relocation Plaintiff used the large front-end loader (identified in section D above), as well as a smaller front-end loader. Mr. Creech presented detailed testimony regarding the length of time each of these pieces of equipment were used in this operation. Furthermore, rather than calculating its damages based on the "fair rental value" of this equipment, Plaintiff presented evidence regarding the cost to own and operate these two pieces of equipment. *See* Plaintiff's Exhibits 5, 12, 18. The Court finds Plaintiff's evidence (unrefuted by Defendant) on this matter persuasive. Again, this evidence was not available to the Special Master. The Special Master's recommendation is, therefore, adopted in part and rejected in part. Accordingly, Plaintiff shall receive $125,900.37 in damages for the costs incurred to relocate the breach-related material.

K.   Rental Fee

Plaintiff seeks to recover $90,000 in rental fees to store the breach-related material on its new concrete pad. The Special Master found this to constitute a properly recoverable incidental damage. The Court agrees with the special master that Plaintiff is entitled to recover damages for the post-breach storage of the material in question, but disagrees as to the amount to which Plaintiff is entitled.

Plaintiff asserts that it is entitled to receive as a storage fee an amount equal to six percent of the cost to construct the new concrete pad. Asserting that the concrete pad cost $1.5 million to construct, Plaintiff claims damages in the amount of $90,000.00. The Court does not find fault with the premise of Plaintiff's request, however, the evidence reveals that the concrete pad cost far less than $1.5 million to construct. Mr. Creech testified that it cost $918.732.89 to construct the new concrete pad. This testimony is consistent with Plaintiff's Exhibit 16 introduced during the evidentiary hearing. The Special Master's recommendation is, therefore, adopted in part and rejected in part. Accordingly, Plaintiff shall receive $55,123.97 in storage fee damages, which represents six percent of the cost to construct the concrete pad.

L.   Additional Marketing Expenses

Plaintiff claims that it is entitled to receive $35,000 in damages to compensate it for marketing expenses incurred in attempting to resell the breach-related material. The Special Master awarded to Plaintiff the full amount requested. Defendant does not dispute that Plaintiff is entitled to recover those marketing expenses actually incurred, but disputes the amount requested by Plaintiff.

Plaintiff's request is based on two items. The first is the expenses actually incurred by Plaintiff to market and resell the material in question. This amount equals $253.84. *See* Plaintiff's

Exhibit 19. The remaining amount represents a theoretical payment to Mr. Creech for the time he spent conducting such marketing activities. While the Court agrees with the Special Master that Plaintiff is entitled to recover the amounts in the former category, the Court disagrees as to the latter category.

As Plaintiff acknowledges, Mr. Creech does not receive a salary from Plaintiff. Thus, the amount claimed for Mr. Creech's time represents a hypothetical expense not permitted under the Uniform Commercial Code. *See* Uniform Commercial Code § 2-710:12. The Special Master's recommendation is, therefore, adopted in part and rejected in part. Accordingly, Plaintiff shall receive $253.84 in damages for marketing expenses actually incurred.

## CONCLUSION

As discussed herein, the Special Master's Report and Recommendation is **adopted in part and rejected in part**. Plaintiff is hereby awarded $830,089.02 in damages. An Order consistent with this Opinion will enter.

Date:  June 28, 2006                                          /s/ Ellen S. Carmody
                                                              ELLEN S. CARMODY
                                                              United States Magistrate Judge